Good morning everyone. Good morning. Alright. Counselor who is going to argue the matter, please approach the podium and identify yourselves and the party that you are representing. Hello, I'm James Wozniak with the State Appellate Defender's Office. I represent the opponent's matter. Okay. And Assistant State's Attorney Beth Pfeiffer-Burns on behalf of the people. Okay. A couple of reminders. Number one, the microphone doesn't amplify, so please keep your voice up loudly and clearly so everybody can hear you. Also 15 minutes apiece. Time for rebuttal? Yes, Your Honor. How much? Five minutes. Five minutes? Okay. And we're ready to proceed? Yes, Your Honor. Alright. We will proceed. May it please the Court, Counsel. Again, my name is James Wozniak with the State Appellate Defender's Office. I represent the opponent's matter, Jody Madison. Mr. Madison raised five issues on appeal. I am prepared to discuss and answer questions on any of those five issues. However, I'm going to dedicate the majority of my oral argument on two of those issues. Which are? The first would be that the court erred where it allowed the State to present evidence of another incident that occurred in 2011. Okay. Which Mr. Madison was charged but acquitted of the crime. And the second would be that Madison was denied the effective assistance of counsel where counsel failed to object to the prejudicial hearsay statements from a nurse who questioned Madison's accuser, L.S. Okay. Well, since you've already identified the two that you want to address, I have a question regarding the one with regards to the criminal sexual assault. Sure, Your Honor. Can you explain why criminal sexual assault is a lesser included offense of the aggravated kidnapping in this case? Yes, Your Honor. So the State proceeded on three counts that he was convicted of, Mr. Madison. We have two counts of criminal sexual assault and an aggravated kidnapping. As charged and in the juror instructions, proof of the aggravated kidnapping required proof that Mr. Madison committed criminal sexual assault. During the State's evidence and in their closing arguments, they argued that there was two acts of sexual penetration that gave rise to the two counts of criminal sexual assault. And then when they got to the aggravated kidnapping count and explained how they approved that beyond a reasonable doubt, they said to the jury, as we have stated, we approve the acts of criminal sexual assault and they needed one of those counts to prove aggravated kidnapping. So as charged here, one of the criminal sexual assault charges serves as a predicate offense to prove aggravated kidnapping. Because Mr. Madison was convicted and sentenced in all three, he was sentenced to 20-year sentences in all three in order to run consecutive. But counsel, wasn't he convicted of another felony as well that was merged? He was found guilty. He was found. Of impersonating a police officer? Yes, he was found guilty of false impersonation of a police officer. I would say he was. Why couldn't that be the predicate, the underlying, underpinning? It could have been, had the state charged it and argued it that way. That's not how the state's charging documents, the jury instructions, or its argument in closing was that false impersonation was the underlying offense to prove aggravated kidnapping. So how they decided to charge him under their case was criminal sexual assault served as the predicate offense to prove aggravated kidnapping. So does Ravellis-Cardova have any application here in the Supreme Court's case? I believe it does, Your Honor, because they're called the facts that everyone knows as a home invasion. Right. Where, again, the predicate offense of the home invasion was a, I believe, criminal sexual assault and that as well. And in that case, the Supreme Court decided that the criminal sexual assault served as the predicate offense as the home invasion, and a conviction and sentence on both could not stand, so that the conviction for the criminal sexual assault needed to be vacated. And that's the same here. Where we have those, we have two counts of criminal sexual assault. It's our, my position that this court could decide which criminal sexual assault conviction to vacate or remand to the circuit court with instructions to vacate one of the convictions, whichever one the circuit court. The result would be the same. He gets 20 years' office. Correct, Your Honor. Yes. Yes. Okay. All right. And go on to your two issues you wanted to raise. Thank you. Please. The state's theory of this case was relatively simple at trial, is that L.S. met Mr. Madison on the street. She believed him to be a police officer. She followed him to an apartment, eventually to a room, and then she engaged in a sexual activity with him. Her testimony was that she followed him and that she engaged in that activity because she was afraid that him being a police officer, what might happen if she refused him. Did he ever identify himself as a police officer? No, Your Honor. Okay. He, Mr. Madison, with L.S.' testimony was that Mr. Madison had a badge of what appeared to be a gun to her. It appeared to be in a uniform. It appeared to be in what she described as a white shirt that she identified as what she called a police of power shirt that had L.T. on it. Yeah. Lieutenants wear white shirts, don't they? Yes. There was testimony. And why was he dressed that way? Any evidence of that? Why was he dressed that way? Did he have a job as a security guard? That was the defense counsel's argument, that he was a security guard. When he was arrested later on, he was arrested in a similar dress as what L.S. described. The badge said phenomenal security. The emblem on his shirt said phenomenal security. There was also the incident, the 2011 incident that occurred with Mr. Higginbotham. There was also evidence that was discussed before that Mr. Madison was serving as a security guard at that time when that occurred. In regards to the paraphernalia that he was wearing and his appearance, that was the defense counsel's argument and closing argument, correct? I mean, there was no evidence introduced that he was a security guard or that he had indicated that he was working in that capacity. Not that he was working in that capacity. That was the argument. There was evidence that was presented to the jury of photographs of what he was wearing when he was subsequently arrested that L.S. described as similar to what he was wearing at the time. That did say phenomenal security, and counsel pointed that out to the jury. The defense theory of this case was that, again, Mr. Madison was a security guard. He never said that he was a police officer and that this was a consensual encounter. The only witness from the state of what occurred that night was L.S. And from her testimony, Madison never told her he was a police officer. He never threatened her with anything that a police officer could do, arrest her or any other activity that a police officer might do. She saw a badge that she perceived to be a firearm. However, her testimony was that the firearm, what she thought was a firearm, remained in his belt. At some point, he does take it out and put it on a nightstand. We juxtapose that with the 2011 incident where Mr. Higginbotham testifies that he sees a vehicle that he thinks is a police sell-off, is how he describes it. Mr. Madison coming out angrily, armed with what Higginbotham believes is a firearm, waving the firearm, threatening Mr. Higginbotham to send him to the promised land. And then you also have a police officer testify. And he also says he's the police. He also says he's the police, Your Honor. Mr. Higginbotham doesn't buy that, though. His response is that you're not even a rent-a-cop. We have an officer, Detective Coleman, that testifies at a nearby business. There's a bulletproof vest, a duty belt, and a handcuff key that is located that Mr. Madison says is his. And an empty gun box. An empty gun box, yes, Your Honor. Yes. What's interesting about Mr. Coleman's testimony is Mr. Higginbotham doesn't see any of those items. Those items are unrelated to the incident that occurred. He sees a gun. He sees a gun, yes. He sees a gun, and he has the person representing to him that he is a police officer. Correct. And then the second, I mean the officer, then corroborates what L.S. or some of the things that L.S. says he had on when she saw him when they recovered these things in this office in the auto repair shop. Well, I believe the items would be a belt, because she didn't testify about a bulletproof vest. No, but I said some. Yes, Your Honor. Was there a badge? Yes. I can't remember which one of them saw the, if she saw the handcuffs. Did she see handcuffs too? Yes, she did. Right, and then in the auto shop they saw a handcuff key, if I'm correct. I'm just thinking of the things they corroborate, the testimony of L.S. A person, a reason for the state to introduce these things to show his intent to impersonate or represent himself as a police officer. I agree, Your Honor. That's what the state argues that they're trying to bring this evidence is to show absence of mistake or innocent frame of mind of his intent. But the way the state argues it and the facts that are presented, I would say the state was arguing this for propensity, and also this was highly prejudicial. We have to remember that Mr. Madison was charged with aggravated assault in this 2011 incident, and he was acquitted. A fact the jury never learned. Even though the state said during the pretrial proceedings discussing this incident that they would inform the jury that he was acquitted, the jury never learned it. So the issue of acquittal never came up? Never came up to the jury. Do you have a case law that says that if the state's attorney says that they'll advise of the acquittal and don't, that that's improper? I did not cite any, and I can't think of anything off the top of my head, Your Honor. That's why I've couched this argument both as the- Ineffectiveness. Counsel should have for certain made sure when the state did not do it or the court- Was there an objection made when that evidence with regards to Higginbottom was going to be introduced? There was an objection, I believe, generally at the beginning to renew the objection because there was a pretrial proceedings on it. Then there was some back and forth about what actually could be presented because Officer Coleman's testimony, the defense attorney wants to bring in more information about Mr. Madison serving as a police officer, or serving as a security guard at the dealership where this was found. There was no objection specifically about or discussion from defense counsel that the jury needs to learn about the acquittal. Anything else on this issue that you want to raise? If there's no other questions, I can move on to the next issue. Oh, no, no. I wanted to hear your argument on the ineffective assistance based upon the nurse's testimony. Thank you, Your Honor. We have a nurse by us here that treated and evaluated L.S. in the emergency room. The nurse goes through the questions that are part of the Illinois State Police Sex Assault Kit and goes through a series of questions. Amongst the answers to these questions are many, many, well, everything else is hearsay, and there is an exception built into the law that these hearsay statements would be admissible if they're for the purpose of medical diagnosis or treatment. However, much of what the nurse testified that they were, correct? Correct. She testified that all the answers that she testified to were gathered for purposes of treatment. Didn't she testify to that? She testified to that, but I would say that she's not, as far as I know, an attorney or knowledgeable of whether or not that is accurate or not. She's also going off from the testimony of rote script of questions that are part of this Illinois State Police Sex Assault Kit. So she's just going through each question as they come and as they're written. That was her role, right? She was a sexual assault? Correct. To ask the questions, then to inspect and diagnose any injuries that Ellis may have had, to look at her sexual organs, take swabs in this case and then submit it as part of the evidence kit. But questions pertaining as to the defendant's height, weight, appearance and things of that nature, how is that tied into making an assessment in terms of examination? It's not, Your Honor. And it's more than just that. There was the whole description of what occurred before, her getting cigarettes, where she met Mr. Madison, him showing her a badge, going to her house. During the sexual activity, him taking out a gun and putting it on a nightstand. Afterwards, the discussion about him giving her his name and then her leaving her bag there so that when she calls later on, he puts the bag outside of his apartment building. All that's unrelated to diagnosis. But counsel, I mean, a rapist's weight could be relevant, no? Toward the diagnosis and treatment based upon the force of the weighted person engaging in this act? I can see that it would be relevant. There was no allegations from Ellis about using his weight to pin her down or any use of force in that way. And then I want to come back to what you said earlier as well. Ellis testified here, and she testified to all the same subject matters that were raised by the nurse's testimony. Correct. So the reason that we keep hearsay out is because we want the declarant to be present to be cross-examined. In this instance, the declarant was cross-examined, correct? Correct, yes. The error here would be, as I've argued, is the cumulative effect of the nurse's testimony. Can I interrupt you? Yes, yes. I'm sorry. No, please. You don't separate it in your argument, but I know this is an assumption, counsel. Okay. Just because I know you and I know the other lawyer who's going to argue against you. You're not saying that everything the nurse said was not admissible. You'd agree that her testimony that the victim said she was made to orally copulate him would be a proper testimony, that the two sexual assaults would be proper. I assume even the washing of herself, because that would impact the nurse getting samples from her. Am I correct? Yes, Your Honor. So the things that you are objecting to are the course before she gets into the place where the gun is placed, the phone call that was made, all of that, that didn't go specifically to the sexual assault. Am I correct? Yes, Your Honor. All right. I want to know what case that you have. I think there's just one case that was cited, I think. And I've had three cases today, so who knows if I'm correct, but I think there was just one case cited. And there's not a or there was no case that I saw that said the kind of evidence that was introduced would be improper, because it didn't say, and this guy is the one who raped me, save for an identification. So do you have a case? What is it? What was the case? Is it Ballester? I believe so, Your Honor, yes. And that was the one case that I located, so as I stand before you, I can't think of another case. That's what I was thinking. I tried cases for 20 years at 26th and California and heard all kinds of testimony, and I cannot believe that there's not a case that you can find. If it's improper to introduce this evidence, it wouldn't have said it was an error. And that's why I was asking you. I agree, Your Honor. I believe there was also, I don't know if that was the Ballester, there was a case where there was a concurrence where the justice in the concurring opinion found that this sort of testimony should, is improper hearsay and would have found it improper and, if I recall, reversible. Tireless. Yes. The majority opinion in that case, because that was a family member that committed the sexual assault, found that in that scenario some of the nurses or the doctor's testimony, I don't know, in that case was proper because I'm identifying the family member, and plus you're going to have some genetic concerns potentially with the sex assault that could result in pregnancy if it's a family member. Also, if you're evaluating the mental health of the person going back to the parent that may have committed this offense, L.S. doesn't know Mr. Madison before this incident, so none of that would apply. And this just serves as cumulative testimony to L.S.'s testimony. And here the State's entire case is based on the credibility of L.S. And now you have a nurse reiterating almost the entirety of L.S.'s testimony. And it was deficient performance to not object to that. There's a reasonable trial strategy not to object to that, as hearsay, because it's not an exception in the statute. And Mr. Madison was prejudiced by his counsel's deficient performance. Counsel, and if you assume that it's, if we assume that it was deficient on him, why is it reversible? Can you see it as harmless when some of, I'm just thinking of the testimony that she said that she held the bag outside. Well, that was corroborated by the officer who went and got the bag. She said that there was a badge and gun, and some of the police officers at the time that he was arrested said he had a, I don't think he had a gun, maybe, but he had a badge and handcuffed keys or something, I can't remember. But a lot of the things that the nurse said, even if they were or should not have been introduced, a lot of it was corroborated by other testimony. So it was in the record anyway. It was, you're correct about the bag and what he was wearing, but I would say that that's, again, what adds to the harm of this, is that now you have hearsay statements that's adding another layer on, you have Ellis' testimony, it is corroborated by some of the officer's testimony of recovering the bag, and later when Mr. Fletcher was arrested, you have the nurse's testimony on top of that. And this case is really what the jury was tasked with, is Ellis is saying that this was not consensual, this event, and defense counsel arguing that it was, and making that argument based on Ellis' own testimony. For instance, she, following him down the street, he opens up a gate to the apartment complex, she follows in, goes into the apartment, every time she says she doesn't like a sexual position, he changes, he gives her his phone number, he says he's going to get paid next week, he leaves the bag outside when she calls. As counsel argued, these are not actions that someone who has committed sexual assault would take, and points to this actually being a consensual event. And that's where the credibility of Ellis is so important, and her credibility being bolstered by the nurse's testimony is where the prejudice occurs. I have a question that's somewhat related to the nurse's testimony. She indicated that there was a weapon? The nurse indicated that there was a weapon? One of the questions she asked, yes, and Ellis responded that there was. And Ellis indicates that there was a weapon also? Yes, correct. Was there ever a weapon found? No, Your Honor. Neither in Mr. Higginbotham's 2011 incident or this, or when Mr. Madison was arrested a couple months later. Is there anything else you want to add? I mean, you do have a couple minutes for rebuttal. Yes, I'll save time for rebuttal. Is there any questions on these issues? Thank you, Your Honor. Good morning. Good morning. May it please the Court. Ellis said on cross-examination that the only reason he got me in there was because of that badge and the gun. That's what she said, and now the defendant's asking this Court to find that when he displayed the badge and gun and told Ellis, you're coming with me, when he took her down the alley, through a locked gate, and into his basement apartment. Now the defense is asking you to find that's insufficient evidence of the threat of force. However, in the light most favorable to the people, a rational jury could find that the threat of force element was proven beyond a reasonable doubt. The threat of force by statute, obviously, is when the accused threatened to use force, and the victim under the circumstances reasonably believed he had the ability to execute the threat. Counsel, I have a question. Are there any cases in Illinois which state that the threat of force for purposes of a criminal sexual assault involves the impersonation of a police officer? I did not see any case that said specifically that impersonation of a police officer alone was sufficient for threat of force, but that's not what we have here. What we have here is, in fact, at that point, she hadn't even seen the shirt, which she later said just reinforced essentially her belief that he was a police officer. But what she did have was the threat of lethal force through what she saw with the firearm, and the badge, and then the command. And so it wasn't just the false impersonation of a police officer alone. And that's where the case also that fits, this fits squarely within, is the case of Smith. And this court's ruling in Smith, which says that the threat of force precedes necessarily the penetration, and that threat of force lingers and subdues the victim into believing that this particular offender had the ability to execute the threat. I would submit that there are so many reasons that this victim had to believe that the defendant had the ability to execute the threat. The defense had cited a case in which, in this part of their brief, in which the threat of force was different and distinguishable, and it was overturned by the defense. That victim's reasonable belief, and that was the case of Lamonica. In that case, it wasn't insufficient, because the force was, there was, first of all, there wasn't a threat of force. It was only inherent in the act, and the victim in that case never perceived a threat. So with respect to defense counsel's arguments about the indicia of force as well that was present, the victim didn't necessarily see a phenomenal security badge. But what she did see, which was present when he was arrested, was the Chicago police flag. But I would submit he didn't need to say who he represented when he represented himself as a police officer. He could have said Cook County Sheriff. He could even have said security guard. But he didn't. He let that linger, and that threat of force hang over her. And I'm only interrupting you because the appellant did not stress these issues, and certainly we've read the briefs on them. I'd like you to address this point regarding the introduction of the nurse's statement and the 2011 incident with Mr. Higginbotham. Thank you. The 2011 incident with respect to Mr. Higginbotham, as we explained in our brief, that other crime's evidence was relevant for the defendant's intent, absence of an innocent subject. State of mind and absence of mistake. Now certainly the defendant's intent was at issue in this case. But what I would also submit is that it didn't prejudice the defendant. The idea that if the jury did learn, first the jury didn't learn what the charge was, only that he was arrested. And second, the fact that he was acquitted, the defense has not demonstrated that the result of the proceeding would have been different. And I would also point... Do you believe it would have been different if the jury would have known that he was acquitted? I don't think that the jury would have... I don't think that the result of the proceeding would have been different. Because the evidence in the case... First, it could have also, as I stated in my brief, been a strategy decision. Because you'll note that during the jury instruction conference, the defense didn't even want the limiting instruction. The defense didn't even want the jurors to know that they could only consider that evidence with respect to the defendant's intent, absence of mistake, and an innocent state of mind. Because the defense said during that jury instruction conference they didn't want to highlight it. So outside of whether or not it was a strategy decision, certainly, obviously, anytime someone is acquitted, you would want to put that in front of the jury. But I'm not saying that it was a great strategy decision, but the question is whether or not the result of the proceeding would have been different. And had the jury known that he was acquitted, as the case that I cited in my brief of Baldwin, there's no evidence in this case. Because the victim was so credible. The victim was credible, we had immediate outcry, there was DNA, and there was the medical evidence. Which, with respect to Your Honor's questions about the nurse's testimony, it is true that, as Justice Walker has pointed out, that the nurse did say that all of these questions that she read, and as counsel pointed out, were from a prescribed set of questions. They were not her own subjective questions. But I would, again, with respect to this issue, again, it comes under ineffective assistance of counsel, and I would suggest, again, that the result of the proceeding would not have been different. Because much of this evidence was testified to by L.S., and she was subject, as Justice Walker has pointed out, to cross-examination. And additionally, you all were talking earlier about whether or not there was a case in which the statements pursuant to medical diagnoses had been overturned, and I can't say the name. O-E-H-R-K-E, counsel cited it in his reply brief, and that was the case where the woman, she was injured, and her statements to the physicians, she subsequently passed. And so, about her son beating her up. Because counsel also, in Fouster, the psychological harm which could have resulted, which was why the identifying information was allowed to be presented in that case. But I would suggest, this wasn't an I.D. case anyway, so again, the result of the proceeding wouldn't have been different. The defense was consent. Additionally, even the statements to the nurse about the weapon, the jury wasn't influenced by that, because they acquitted him of all the charges that had to do with the weapon. So again, there's no evidence that the result of the proceeding would have been different. Finally, I know that we talked about, when I say we, I mean you all, talked about lesser included offenses, and with respect to the charges. And what counsel has argued is the way it was charged, and as charged, and in the jury instructions. However, that's not what the Miller Court says that we're supposed to do. We're supposed to apply the abstract elements. And the abstract elements in this case, and I know you all were discussing Ravellis-Cordova, and again, I would say in that case, as I said in my brief, that the count that they decided was a lesser included, was also prescribed within that statute. I would submit to the court that Scott is still good law, Boyd was good law, and Thorette, that is a federal case, is still good law. There is not a case where aggravated kidnapping and criminal sexual assault was determined to be a lesser included. And I would suggest that it's because in Illinois we think of aggravated kidnapping differently. And we think of sexual counts differently. That's why we have consecutive sentencing. And that's why each penetration is even consecutive. So each penetration is basically considered another act, because none of them are free. But in Ravellis, we had a home invasion, and the court looked at the home invasion along with the criminal sexual assault and said, well, the language in the statutes, but here we have someone impersonating a police officer, then you have the criminal sexual assault. So does Ravellis still apply? Ravellis, I would submit, does not apply. Because Ravellis-Cordova, they could have said that it's extended, or they could have overruled Scott, but the sexual assault was actually even prescribed within the home invasion statute. And in aggravated kidnapping, one need only commit great bodily harm or any other felony. And so that's why I would suggest that it's different than Ravellis-Cordova. And I don't think that Ravellis-Cordova directs any particular outcome in this case, because aggravated kidnapping obviously is different. So unless the court has any other questions, for these reasons and those contained in the brief, we're asking that defendant's conviction and sentence be affirmed. Thank you. Thank you, Your Honor. Briefness to the fifth argument here about the criminal sexual assault serving as the predicate offense of aggravated kidnapping. The aggravated kidnapping statute as written does say any felony. So false personation could have served as the predicate felony if the State would have charged it that way, argued it that way, and instructed the jury that way, which they did not here. In fact, the evidence of this case is there were three acts of sexual penetration. There was two acts of vaginal penetration, there was an act of oral penetration. The State chose not, for whatever reason, to charge the act of oral penetration. And, in fact, when they gave instructions to the jury about what sexual penetration means, it just said sex organ to sex organ, not mouth to sex organ. So the way the State charged this offense, argued it, and instructed the jury, is criminal sexual assault served as the predicate felony to prove aggravated kidnapping. It's no different than felony murder, armed violence where an underlying felony serves as the predicate offense, and as Ravel's quote over had with home invasion. Although the cases that counsel cited, Scott and Boyd and the Seventh District case of Nelson, weren't explicitly overruled by Ravel's quote over, I would argue that the holding of Ravel's quote over overruled those, and that holding should be applicable here, that one of the convictions for criminal sexual assault should be vacated. So if there's any other questions, Your Honors, about any other issues, we ask, pursuant to the first two issues on appeal, to vacate Mr. Madison's convictions outright, or as to the third and fourth argument, to reverse his convictions for a man for a new trial, or in the fifth argument, to reverse one of his convictions for criminal sexual assault. Thank you, Your Honors.